IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SARAH M. ESBERNER,
EDWARD J. ESBERNER and
CATHERINE A. ESBERNER,

      Plaintiffs, and

OPINION AND ORDER

STATE OF WISCONSIN DEPARTMENT
OF HEALTH SERVICES,                                     10-cv-40-slc[1]
KATHLEEN SEBELIUS,
Secretary of Department of Health and Human Services,
and SECURITY HEALTH PLAN OF WISCONSIN, INC.,

      Involuntary Plaintiffs,

  v.

CHRISTINE M. DARNELL,
WISCONSIN CENTRAL LTD.
and CANADIAN NATIONAL RAILWAY COMPANY,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

On December 31, 2006, a train operated by defendant Canadian National Railway Company in Ashland County, Wisconsin, struck a car in which plaintiff Sarah M. Esberner was a passenger, causing her severe injury. She and her parents, Edward and Catherine Esberner, commenced this civil action for monetary relief against Canadian National and its

---

[1] This case was assigned automatically to Magistrate Judge Stephen Crocker. At this early date, consents to the magistrate judge's jurisdiction have not yet been filed by the parties to this action. Therefore, for the purpose of issuing this order I am assuming jurisdiction over the case.

railway subsidiary, Wisconsin Central, Ltd. Also named as a defendant is Christine Darnell, who was the driver of the car involved in the accident. State of Wisconsin Department of Health Services, Kathleen Sebelius, Secretary of Department of Health and Human Services and Security Health Plan of Wisconsin, Inc. were named as subrogated parties to this action because they were thought to have paid benefits to plaintiff for the injuries she sustained in the December 31, 2006 collision.

Plaintiffs filed this suit initially in the Circuit Court for Ashland County. On January 29, 2010, defendant Wisconsin Central, Ltd. removed it under 28 U.S.C. § 1441, alleging diversity jurisdiction under 28 U.S.C. § 1332 as grounds for removal. Now before the court is plaintiffs' motion to remand the case to state court on the following grounds: 1) the involuntary plaintiff, State of Wisconsin Department of Health Services, is an "arm of the state"; a state is not a citizen of a state; therefore, diversity jurisdiction is lacking; 2) Darnell, a Wisconsin citizen, is a real party in interest who is non-diverse from plaintiffs; and 3) the notice of removal was defective. Plaintiffs seek an award of costs and attorney fees under 28 U.S.C. § 1447. Involuntary plaintiff Department of Health Services, who is represented by the Wisconsin Attorney General, has filed a brief agreeing with plaintiffs that it is an arm or alter ego of the state. Because I agree that the department is an arm of the state whose presence in this lawsuit defeats diversity jurisdiction, whether it is a defendant or a plaintiff, I am granting plaintiffs' motion and remanding the case to state court. In addition, because I find that defendant WCL lacked an objectively reasonable basis for removing this case, I am ordering it to pay the costs and attorney fees incurred by plaintiffs in connection with

the removal.

BACKGROUND

Plaintiffs Sarah Esberner and her parents, Edward and Catherine Esberner, are adult citizens and residents of Ashland County, Wisconsin. Involuntary plaintiff State of Wisconsin, Department of Health Services, is a governmental agency with offices located in Madison, Wisconsin. The department has paid Medicaid benefits in the amount of $90,376.14 on behalf of Sarah Esberner for the injuries she sustained in the December 31, 2006 collision.

Involuntary plaintiff Security Health Plan of Wisconsin, Inc. is a Wisconsin corporation, organized and existing under the laws of the state of Wisconsin. The offices of its registered agent are located in Marshfield, Wisconsin. Security Health is alleged to have paid medical benefits to plaintiff Sarah Esberner for her injuries. (Plaintiff also named as involuntary plaintiff the United States Department of Health and Human Services on the ground that it might also have paid Medicaid benefits to plaintiff. The department has filed a notice stating that it has no interest in this case and asking that it be dismissed as an involuntary plaintiff. Dkt. #31.)

Defendant Christine Darnell is an adult citizen and resident of Ashland County, Wisconsin, and the owner and operator of the vehicle in which Sarah Esberner was traveling on December 31, 2006. Plaintiffs assert a "contingent" claim for relief against Darnell, alleging that

> [b]y the terms of a policy of automobile insurance issued by Liberty Mutual Fire Insurance Company to the parents of Sarah M. Esberner, which policy provides benefits for injuries and damages caused by the negligence of an uninsured motorist, the Esberners are required to join as defendants any person or entity who/which may have liability for the injuries and damages arising from the December 31, 2006 collision.

Complaint, ¶ 16.

Defendant Wisconsin Central, Ltd., is a foreign corporation incorporated under the laws of the state of Illinois and authorized to do business in the state of Wisconsin. WCL's principal address is 1625 Depot Street, Stevens Point, Wisconsin and the office of its registered agent is in Chicago, Illinois. WCL is a railway subsidiary of defendant Canadian National Railway Company, which is a foreign corporation incorporated under the laws of Quebec, Canada. Plaintiffs allege that WCL and Canadian National were negligent in operating the train, including but not limited to failing to sound the horn and operating inattentively. In addition, the plaintiffs allege that WCL was negligent in its failure to properly maintain the railroad crossing at Hauschild Road.

On January 11, 2010, WCL was served with the summons and complaint. On January 29, 2010, before either Canadian National or Darnell was served, WCL filed its notice of removal, asserting that this court has jurisdiction based upon complete diversity of citizenship.

OPINION

A. Remand Standard

The burden of establishing diversity jurisdiction in a removal case rests on defendant

WCL, the party seeking removal. Tylka v. Gerber Products Co., 211 F.3d 445, 448 (7th Cir. 2000). The presumption is that plaintiffs may choose their own forum. Therefore, a district court must construe the removal statute narrowly and resolve any doubts regarding subject matter jurisdiction in favor of remand. Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993); People of the State of Illinois v. Kerr-McGee Chemical Corp., 677 F.2d 571, 576 (7th Cir. 1982).

### B. State Department of Health Services as Alter Ego of State

Plaintiffs contend that this case must be remanded because the involuntary plaintiff, the State of Wisconsin Department of Health Services, is not considered a citizen of any state under 28 U.S.C. § 1332 and therefore diversity jurisdiction is lacking. Defendants do not contest plaintiffs' assertion that that a state cannot be a citizen for diversity purposes, Indiana Port Commission v. Bethlehem Steel Corp., 702 F.2d 107, 109 (7th Cir. 1983), and they agree with plaintiffs that the department, as a subrogee, has a substantial stake in the outcome of this case and is therefore a real party in interest. Navarro Savings Association v. Lee, 446 U.S. 458, 461 (1980) (in determining whether diversity exists, courts look only at parties "who are real and substantial parties to the controversy"). Defendants take issue only with plaintiffs' position that the Department of Health Services is an "arm" or "alter ego" of the State of Wisconsin. If it is, then the state is the real party in interest and diversity jurisdiction is lacking. Moor v. County of Alameda, 411 U.S. 693, 717 (1973) ("[A] political subdivision of a State, unless it is simply the arm or alter ego of the State, is

a citizen of the State for diversity purposes.") (citations and internal quotation marks omitted).

Although the question of diversity is distinct from that of immunity (but closely related because of the Eleventh Amendment limitations on federal court suits against states),the analysis for determining whether a governmental entity is an arm of the state for Eleventh Amendment purposes applies to determinations of citizenship for diversity purposes. Adden v. Middlebrooks, 688 F.2d 1147, 1153 (7th Cir. 1982). See also Maryland Stadium Authority v. Ellerbe Becket Inc., 407 F.3d 255, 260 -261 (4th Cir. 2005); University of South Alabama v. American Tobacco Co., 168 F.3d 405, 412 (11th Cir. 1999); University of Rhode Island v. A.W. Chesterton Co., 2 F.3d 1200, 1202 n.4, 1203 (1st Cir. 1993). This would seem to end the matter, for "a state agency *is* the state for purposes of the eleventh amendment." Kroll v. Board of Trustees of Univ. of Illinois, 934 F.2d 904, 907 (7th Cir. 1991) (emphasis in original). Nonetheless, the parties urge the court to consider certain factors that courts have found relevant in determining whether a particular state entity is an arm or alter ego of the state. These factors, which are not consistent from circuit to circuit or even within the Seventh Circuit, include the impact of a money judgment on the state treasury; the status of the agency under state law; whether any legislative provision states that the agency performs an essential governmental function; the agency's degree of autonomy; whether the agency is involved with local versus statewide concerns; the source of funds for the entity; whether the entity has authority to sue and be sued in its own name; and whether the entity has the right to hold and use property.

Compare Adden, 688 F.2d at 1153 (relevant factors in alter ego analysis are whether agency may sue and be sued in its own name, whether any legislative provision states that agency performs an essential governmental function, whether agency has power to buy or sell property in its own name and whether agency is accorded independent status under state law), with Thiel v. State Bar of Wisconsin, 94 F.3d 399, 401 (7th Cir. 1996) (identifying relevant factors as extent of state's control over agency, whether agency acted as state's agent when it took action in question and impact of judgment on the state treasury). See also Fitchik v. New Jersey Transit Rail Operations, 873 F.2d 655, 659 (3d Cir. 1989) (3-part test); Delahoussaye v. City of New Iberia, 937 F.2d 144, 147 (5th Cir. 1991) (6-part test); Ram Ditta v. Maryland National Capital Park & Planning Commission, 822 F.2d 456, 457-58 (4th Cir. 1987) (4-part test).

      Under any test, it is plain that the department is an arm of the state. Of paramount importance is the agency's status under state law. The Department of Health Services is an agency of the state, created as a department of the executive branch of state government. Wis. Stat. § 15.19. It does not have independent status. Cf. Wis. Stat. § 25.15(1) (stating legislature's intent that State of Wisconsin Investment Board "be an independent agency of the state."). To the contrary, the department is under the direction of the Secretary of Health and Family Services, who, like other executive officers, reports to the governor and the legislature. Wis. Stat. § 15.04(1). The department generally receives public funding for all of its programs, does not raise its own revenue and does not have the right to buy and sell property in its own name.

The department's duties include maintaining a public health system, advising the legislature about health matters, distributing state and federal public health funds, administering programs for the control and prevention of public health problems and providing facilities and services to protect the public from sexually violent persons. Wis. Stat. §§ 250.03, 250.04 and 980.12. With respect to medical assistance, the department receives Medicaid funds from the Medical Assistance Trust Fund, which funds healthcare for indigent residents. The Medical Assistance Trust Fund is funded by federal funds and state general public revenue appropriations under Wis. Stat. ch. 20. Wis. Stat. § 25.77.

Faced with these facts, defendant WCL concedes that the department carries out essential government functions and operates as an arm of the state in doing so. Kimps v. Hill, 200 Wis.2d 1, 20, n.12, 546 N.W.2d 151, 160 (1996) (defining governmental functions as those involving kind of power expected of government, that is, "those of the essence of governing, public, mandatory or essential.") (citations omitted). WCL argues, however, that determining whether the state is the real party in interest depends not on the functions of the department in general but rather on the nature of its interest in *this* case, in which the department's interest is merely in the protection of its subrogation claim and in that respect, it is no different than a private health insurer. WCL points out that the department has a Casualty Recovery Unit that is authorized not only to enforce the subrogation claim but to settle the claim without approval, if doing so is appropriate. According to WCL, the provision of insurance is not a traditional government function or a statewide issue but a matter of local concern.

WCL's argument is not persuasive. As an initial matter, whether a state entity may qualify as an arm of the state for some purposes but not others has not been decided by the Supreme Court, Regents of the University of California v. Doe, 519 U.S. 425, 428 n.2 (1997) (finding it unnecessary to decide "whether there may be some state instrumentalities that qualify as 'arms of the State' for some purposes but not others"), or agreed upon by the circuit courts. Compare Puerto Rico Ports Authority v. Federal Maritime Com'n, 531 F.3d 868, 873 (D.C. Cir. 2008) ("once an entity is determined to be an arm of the State . . ., that conclusion applies unless and until there are relevant changes in the state law governing the entity"), with Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp., 208 F.3d 1308, 1311 (11th Cir. 2000) ("The pertinent inquiry [under the Eleventh Amendment] is not into the nature of a corporation's status in the abstract, but its function or role in a particular context."). However, even if the scope of the alter ego inquiry is as narrow as suggested by WCL, it does not follow that the department functions as an independent entity as opposed to an arm of the state when it seeks to enforce its subrogation lien under the Medicaid program. Describing the Medicaid program in Arkansas Dept. of Health & Human Services v. Ahlborn, 547 U.S. 268, 275 (2006), the Supreme Court wrote:

> The Medicaid program, which provides joint federal and state funding of medical care for individuals who cannot afford to pay their own medical costs, was launched in 1965 with the enactment of Title XIX of the Social Security Act . . .
>
> States are not required to participate in Medicaid, but all of them do. The program is a cooperative one; the Federal Government pays between 50% and 83% of the costs the State incurs for patient care, and, in return, the State pays its portion of the costs and complies with certain statutory requirements for making eligibility determinations, collecting and maintaining information,

and administering the program. See § 1396a.

(Footnotes omitted).

As a condition of receiving federal Medicaid funding, states must include a provision in their Medicaid plans for recouping funds expended on behalf of Medicaid recipients from liable third parties. 42 U.S.C. § 1396a(25); Ahlborn, 547 U.S. at 275-76. Consistent with that directive, Wisconsin's Medicaid statutes include a subrogation provision, Wis. Stat. § 49.89, which provides, in relevant part:

> The department of health and family services . . . is subrogated to the rights of the recipient, beneficiary or estate and may make a claim or maintain an action or intervene in a claim or action by the recipient, beneficiary or estate against the 3rd party.

Wis. Stat. § 49.89(2).

Thus, by administering the Medicaid program, the Department operates as the state's agent, ensuring that the funds are distributed to indigent residents and fulfilling the state's statutory obligation to seek reimbursement from liable third parties. The provision of funding for the medical care of indigent residents is indisputably an essential government function and a matter of statewide concern. E.g., Barnes v. Glen Theatre, Inc., 501 U.S. 560, 569 (1991) (traditional police power of states is defined as authority to provide for public health, safety and morals). Further, any funds that the department recovers in this lawsuit will be returned to the public fisc.

Defendant WCL cites no statutory provision that imbues the department with independent status in its administration of Medicaid funds or in its attempts to protect its subrogated interests. In the absence of such evidence, the mere fact that the department

may be acting "like" a private health insurer does not show that it is not an arm of the state. The various cases WCL cites in its brief, dkt. #23, at 8, are not on point.  As the state points out, in those cases the state entities were found not to be arms of the state because they were quasi-private insurance funds that operated independently of the state, e.g., Dutta v. Todd, 825 F. Supp. 939, 942 (D. Kan. 1993) (Eleventh Amendment did not bar suit against Kansas medical malpractice fund; fund was not maintained by general state tax revenues but by surcharge on practicing physicians, funds assets were kept separately from state's general funds, fund was overseen by board of governors that included only one state official and fund was akin to commercial liability insurance), and Martin v. Choudhuri, 563 F. Supp. 207, 210 (W.D. Wis. 1983) (Wisconsin's Patients Compensation Fund not entitled to Eleventh Amendment protection because fund was financed solely from fees assessed upon health care providers, was special segregated account, could invest its own assets, was used strictly to pay medical malpractice  claims, was managed by independent board of governors and state expressly disclaimed any liability of the fund), or because the entity was sued in a limited capacity that did not implicate its administration of public funds.  E.g., Foremost Guarantee Corp. v. Community Savings & Loan, Inc., 826 F.2d 1383, 1388 (4th Cir. 1987) (Eleventh Amendment did not bar suit against Maryland Deposit Insurance Fund Corporation in its capacity as receiver of defendant; suit did not allege wrongdoing or seek relief from agency and did not implicate fund's administration of public funds).  In contrast, the suit in this case implicates the department's administration of funds that come directly from the state treasury and which are managed by the state legislature.

WCL's remaining arguments to the contrary are unavailing. WCL points out that under Wis. Stat. § 46.017, "[t]he department may sue and be sued," which was one of the factors identified in Adden, 688 F.2d at 1153, as weighing in favor of a finding that the agency is not an arm of the state. Even giving some weight to this factor, however, it is not enough to outweigh the other factors that warrant a finding that the state is the real party in interest in this case. Thiel, 94 F.3d at 42 (noting that State Bar's ability to sue and be sued, enter into contracts and buy and sell real and personal property did not strip Bar of its state character).

Finally, WCL argues that the department should not be found to be an arm of the state in this case because under Wis. Stat. § 49.89(7), a county may act in the state's stead in a Medicaid recovery action. Because a county's presence in the suit would not defeat diversity jurisdiction, argues WCL, neither should the department's when it is serving the same function. At least one court has found, however, that when a county operates as an administrator of a state's Medicaid plan, it functions not as an independent political subdivision but as an arm of the state. Jordano By and Through Jordano v. Stefen, 787 F. Supp. 886, 893 n.11 (D. Minn. 1992). See also Matranga v. Travelers Ins. Co., 563 F.2d 677, 677-78 (5th Cir. 1977) (private agent authorized to administer Medicaid benefits on behalf of United States entitled to immunity).[2] In any event, it is not necessary to consider

---

[2] To the extent the court appeared to reach the opposite conclusion in Gibson v. American Cyanimid Co., 2007 WL 1725233, 1 (E.D. Wis. 2007), its holding that diversity jurisdiction was lacking did not rest on the ground that the county was not an arm of the state but rather on the ground that the defendants had failed to meet their burden of demonstrating that the amount in controversy exceeded $75,000. Accordingly, I decline to give any weight to the court's statement that it "disagreed" that the state and not the county was the real party in interest in that case.

this question, which is merely hypothetical in this case. The department and not a county is the party pursuing the subrogation lien under the Medicaid statute. For the reasons already discussed, the department is an arm of the state and therefore, diversity jurisdiction is lacking. Accord Johannes v. Wal-Mart Stores, Inc, 07-C-859, 2008 WL 186104 (E.D. Wis. 22, 2008) (finding same).

Having determined that the state is the real party in interest and its presence in this lawsuit defeats diversity jurisdiction, it is unnecessary to decide the alternative grounds for remand offered by plaintiffs, that is, that Darnell is a not a nominal party and that the notice of removal was defective. This case must be remanded to the Circuit Court for Ashland County, Wisconsin.

### C.  Costs and Attorney Fees Under 28 U.S.C. § 1447(c)

Because this case will be remanded, plaintiffs request that defendant WCL bear the costs of litigating the removal and remand as authorized by 28 U.S.C. § 1447(c), which provides that "[a]n order remanding a case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Generally, an award for costs in removal cases is justified when "the removing party lacked an objectively reasonable basis for seeking removal." Wisconsin v. Amgen, Inc., 516 F.3d 530, 534 (7th Cir. 2008) (citing Martin v. Franklin Capital Corp., 546 U.S. 132 (2005)). In Lott v. Pfizer, Inc., 492 F.3d 789, 793 (7th Cir. 2007), the Court of Appeals for the Seventh Circuit held that a defendant had an objectively reasonable basis for removal "if clearly established law

13

did not foreclose a defendant's basis for removal . . . ."  Consequently, the district court should not order payment of costs and actual expenses to the non-removing party when the existing case law on the subject does not establish clearly that removal is unwarranted.

Defendant WCL lacked an objectively reasonable basis for removing this case.  It is undisputed that the department is an agency of the State of Wisconsin lacking independent status under state law.  Although WCL's contention that an entity may be an arm of the state for some purposes but not others has some support in the case law, no case supports WCL's position that the administration of state Medicaid funds or the recoupment of those funds by a state agency does not implicate statewide interests or the state treasury.  Accordingly, I find that defendant WCL must reimburse plaintiffs for their costs and attorney fees incurred as a result of the removal.  Plaintiffs have until May 24, 2010 in which to submit an itemized statement of their costs and fees to the court.  Defendant WCL has until June 4, 2010 in which to submit objections to the fee request.

ORDER

IT IS ORDERED that

1. The motion to remand filed by plaintiffs Sarah Esberner, Edward Esberner and Catherine Esberner, dkt. # 18, is GRANTED and this case is REMANDED to the Circuit Court for Ashland County, Wisconsin. The clerk of court is directed to transmit the record promptly to the Circuit Court for Ashland County.

2. Plaintiffs' motion for costs and attorney fees is GRANTED. Plaintiffs have until May 24, 2010 in which to submit an itemized statement of their costs and fees to the court. Defendant WCL has until June 4, 2010 in which to submit objections to the fee request.

Entered this 13th day of May, 2010.

BY THE COURT:

/s/
BARBARA B. CRABB
District Judge